**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA EASTERN DIVISION**

| | | |
|---|---|---|
| **DURWARD O'NEAL BRISKEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 3:05-cv-725-MHT-VPM** |
| | ) | |
| **COMMISSIONER WRIGHT, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' SPECIAL REPORT**

COME NOW Sheriff Jeff Fuller, Jail Administrator Shirley Johnson and Captain Craig Davidson, Defendants in the above-styled cause, and submit their Special Report to the Court as follows:

**INTRODUCTION**

Plaintiff in this action, Durward O'Neal Briskey, hereinafter "Plaintiff" or "Briskey," filed a Complaint in the United States District Court for the Middle District of Alabama on August 3, 2005. On August 10, 2005, this Court entered an Order instructing Defendants Sheriff Jeff Fuller, Jail Administrator Shirley Johnson, and Captain Craig Davidson to file a Special Report addressing Plaintiff's claims. On September 25, 2005, this Court dismissed Commissioner Wright as a Defendant in this action. The Court, having granted Defendants' Second Motion for Extension of Time for filing the Special Report and Answer, ordered the same to be filed on or before November 3, 2005.

The Plaintiff was arrested on February 22, 2004, for the following offenses: Driving Under the Influence; Attempting to Elude a Police Officer; Reckless Endangerment; Possession of Prohibited Liquors or Beverages; Failure to Wear Seat Belt; Stopping on Roadway; Operating

a Vehicle Without Proof of Liability Insurance; Driving While License is revoked; and Improper Lane Usage. (Exhibit A, Inmate File of Durward O'Neal Briskey, "Inmate File," Arrest Report dated February 22, 2004.) He was booked into the Randolph County Detention Facility that same day. (Exhibit B, Inmate File, Booking Sheet dated February 22, 2004.) The Plaintiff was released on bond on February 24, 2004. (Id.) On November 2, 2004, he pled guilty to the charge of Driving Under the Influence and was sentenced to five years confinement. (Exhibit C, SJIS Case Detail, CC014-149.) On December 13, 2004, the court ordered that four years of Plaintiff's confinement be suspended, with one year of confinement actually imposed. (Id.) Therefore, Plaintiff was re-booked into the Randolph County Detention Facility on December 27, 2005. (Exhibit D, Inmate File, Booking Sheet dated December 27, 2004.) On September 29, 2005, the Court Ordered granted the Plaintiff three years probation, and Plaintiff was released from Jail. (Exhibit C, SJIS Case Detail, CC014-149.)

**PLAINTIFF'S ALLEGATIONS**

Plaintiff's allegations all concern the conditions of his confinement. More specifically he alleges the following: unclean conditions in the Jail showers; that Jail shower water leaks into the kitchen; re-use of plastic eating utensils; the presence of exposed wiring in the Jail; inadequate lighting; the lack of hot water in the Jail's sinks; that the Jail is overcrowded; that water from Jail showers escapes onto the floor presenting a slipping hazard; the confinement of state and county inmates in the same cell blocks; that presence of unclean conditions in the Jail showers and the harshness of the Jail water has caused skin irritation and illness in inmates; and that insects are killed in the Jail kitchen.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS**

Defendants deny the allegations made against them by Plaintiff as being untrue and

completely without basis in law or fact. Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

## I. FACTS

### A. Conditions of Confinement

The Randolph County Detention Facility has in place a systematic cleaning program. (Exhibit E, Affidavit of Jeff Fuller, "Fuller aff. ¶ 6; Exhibit F, Affidavit of Shirley Johnson, "Johnson aff." ¶ 4; Exhibit G, Affidavit of Craig Davidson, "Davidson aff." ¶ 3.) Inmates are provided cleaning materials to use for their maintenance of personal and common areas. (Ex. E, Fuller aff. ¶ 6; Ex. F, Johnson aff. ¶ 4; Ex. G, Davidson aff. ¶ 3.) The Randolph County Detention Facility has bathing facilities which are available to all inmates. (Ex. E, Fuller aff. ¶ 7; Ex. F, Johnson aff. ¶ 5; Ex. G, Davidson aff. ¶ 4.) Hot and cold water is available for bathing and inmates are provided soap and towels. (Ex. E, Fuller aff. ¶ 7; Ex. F, Johnson aff. ¶ 5; Ex. G, Davidson aff. ¶ 4.) The food preparation and serving areas are cleaned daily and are inspected regularly by state and local health agencies. (Ex. E, Fuller aff. ¶ 9; Ex. F, Johnson aff. ¶ 6; Ex. G, Davidson aff. ¶ 5.) An inspection of the Randolph County Detention Facility was conducted by the Alabama Department of Corrections on August 11, 2005. (Ex. E, Fuller aff. ¶ 9; Ex. F, Johnson aff. ¶ 6; Ex. G, Davidson aff. ¶ 6.) The inspection report indicated no problems similar to the conditions that Plaintiff alleges to exist within the Randolph County Detention Facility. (Ex. E, Fuller aff. ¶ 9; Ex. F, Johnson aff. ¶ 6; Ex. G, Davidson aff. ¶ 6.) The Randolph County Detention Facility received the second-highest or highest rating for all "Food Services" questions using that rating scale. (Ex. E, Fuller aff. ¶ 9; Ex. F, Johnson aff. ¶ 6; Ex. G, Davidson aff. ¶ 6.)

The Randolph County Detention Facility has a pest control program in place. (Ex. E, Fuller aff. ¶ 10; Ex. F, Johnson aff. ¶ 7; Ex. G, Davidson aff. ¶ 7.) The Jail is treated monthly by Nick Bolan's Pest Control. (Ex. E, Fuller aff. ¶ 10; Ex. F, Johnson aff. ¶ 7; Ex. G, Davidson aff. ¶ 7.) It is the policy and procedure of the Randolph County Detention Facility to maintain a jail that is safe both for its employees and inhabitants. (Ex. E, Fuller aff. ¶ 11; Ex. F, Johnson aff. ¶ 8; Ex. G, Davidson aff. ¶ 8.) To that end, the Randolph County Detention Facility fire detection and suppression systems are inspected annually to assure that each is in proper working order throughout the facility. (Ex. E, Fuller aff. ¶ 11; Ex. F, Johnson aff. ¶ 8; Ex. G, Davidson aff. ¶ 8.) The Detention Facility is subject to inspection by numerous State agencies responsible for guaranteeing that the Detention Facility structures comply with applicable codes and regulations. (Ex. E, Fuller aff. ¶ 12; Ex. F, Johnson aff. ¶ 9; Ex. G, Davidson aff. ¶ 9.) When a fire or general safety issue arises – whether through an Inmate Request, an Inmate Grievance or Jail staff observation – the concern is addressed promptly and appropriately. (Ex. E, Fuller aff. ¶ 12; Ex. F, Johnson aff. ¶ 9; Ex. G, Davidson aff. ¶ 9.) Jail staff are instructed in the use of portable fire extinguishers. (Ex. E, Fuller aff. ¶ 13; Ex. F, Johnson aff. ¶ 10; Ex. G, Davidson aff. ¶ 10.) An emergency fire evacuation plan is posted in the Detention Facility. (Ex. E, Fuller aff. ¶ 14; Ex. F, Johnson aff. ¶ 11; Ex. G, Davidson aff. ¶ 11.) The Detention Facility also features emergency exits and appropriate fire apparatus. (Ex. E, Fuller aff. ¶ 14; Ex. F, Johnson aff. ¶ 11; Ex. G, Davidson aff. ¶ 11.)

### B. Plaintiff's Noncompliance with the Jail's Grievance Procedure

Plaintiff has not complied with the grievance procedures of the Randolph County Detention Facility. Jail Administrator Johnson never received any grievance from the Plaintiff concerning any of the allegations made the basis of his Complaint. As there is a grievance

procedure in the Randolph County Jail, it could have been used by the Plaintiff to make known any questions or concerns he had regarding his incarceration. However, no grievance was ever written by the Plaintiff concerning these matters. Had any request form or grievance been submitted by the Plaintiff, it would have been placed in his inmate file per Jail policy. However, Plaintiff's inmate file is devoid of any such grievance. (Ex. E, Johnson aff. ¶ 3.)

## II. LAW

### A. All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacity claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983. The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Any claims against Defendants in their official capacities

should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted. Id.; Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

**B. Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1. Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him. First, the Plaintiff has not exhausted the grievance procedures provided at the Randolph County Jail. Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Despite the existence of a grievance procedure at the Randolph County Detention Facility, Plaintiff did not file a grievance with the jail concerning the allegations made the basis of his Complaint.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60. The Sheriff of Randolph, as are his alter egos, is a state officer and therefore would be entitled to sovereign immunity. See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998). Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies).

**2. Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . . In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis." Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002). Because Plaintiff has not made a showing of physical injury – or any injury at all - his complaint is due to be dismissed.

**C. Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as jail officials of Randolph County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their duties. See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004). Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second

inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the Plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Board of Education, 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government

agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

In order to establish a conditions of confinement claim Plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to that condition, and (3) causation." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (first element); Wilson v. Seiter, [502] U.S. [294, 303], 111 S. Ct. 2321, 2327, 115 L.Ed.2d 271 (1991) (second element); Williams v. Bennett, 689 F.2d 1389-90 (11th Cir. 1982) (third element). Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. See Wilson v. Seiter, 502 U.S. at 290.

In terms of the subjective component, "[t]o be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs." LaMarca v. Turner, 995 F.2d at 1535. "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" Id. (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985), cert. denied, 479 U.S. 816 (1986). There must be evidence that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions. Id. at

1979-80. No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not." Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996). Where jail officials attempt to remedy constitutional short-comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives. LaMarca, 995 F.2d at 1536. In addition, Plaintiff must also show that Defendants had some personal involvement in the alleged deprivation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). Plaintiff cannot show that Defendants have been deliberately indifferent to conditions at the Randolph County Jail. Deliberate indifference to an inmate's health or safety can only be shown if the defendants know that the inmate faces a substantial risk of serious harm and disregard the risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825 (1994). Plaintiff has failed to allege or offer any evidence sufficient to sustain a claim that any overcrowding constituted cruel and unusual punishment.

In this case, none of the conditions of which Plaintiff complaints constitutes an excessive risk to his health or safety. Plaintiff has not shown how he has been injured as a result of any of his allegations. Further, Plaintiff never filed a grievance concerning his allegations, and there is no other evidence showing that the Defendants knew of or disregarded any alleged risk. Based on the foregoing, it is clear that Defendants have not violated Plaintiff's constitutional rights. Further, Plaintiff cannot show that clearly established law provided Defendants with fair warning that their conduct was unlawful. Therefore, Defendants are entitled to qualified immunity.

**D. Plaintiff Lacks Standing to Pursue his Claims.**

Prior to determining the merits of a case, the court must consider whether the plaintiff has standing to bring the matter to the court for adjudication. The United States Supreme Court

stated: "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Sledin, 422 U.S. 490, 498 (1975).

> In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action.

Warth, 422 U.S. at 698-499.

To satisfy standing requirements, a plaintiff must show the following:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-181 (2000). At a minimum a plaintiff must show that he personally suffered some actual or threatened injury. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472 (1982).

In the instant case, Plaintiff has alleged no injury in fact. In his Complaint he points out that "many inmates" have suffered injury. However, he does not allege a personal injury. Because Plaintiff has not suffered an injury in fact, his claims against the Defendants must be dismissed due to lack of subject matter jurisdiction.

**E. Plaintiff has failed to allege personal involvement against Sheriff Fuller as required by 42 U.S.C. §1983.**

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation. Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury. Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

The Plaintiff has failed to allege that Sheriff Fuller was in any way personally involved in any alleged violation of Plaintiff's constitutional rights concerning any of the conditions of his confinement. Plaintiff has offered no allegation demonstrating that this named Defendant was in any way involved in the actions he claims were constitutionally infirm. There are absolutely no facts – in fact, the Complaint is completely devoid of any claim against Sheriff Fuller-- to show that this Defendant personally participated in the claims made the basis of the Plaintiff's Complaint, nor does the Plaintiff allege specifically how this Defendant violated his constitutional rights. As such, Plaintiff's claims are due to be dismissed against this Defendant.

To the extent that Plaintiff's claim against Sheriff Fuller is an attempt to hold him liable under a *respondeat superior* theory, his claim must similarly fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged depravation, and he fails to do so.

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996). There are absolutely no facts that show a causal connection between any action of Sheriff Fuller and the alleged constitutional violation. Therefore, Plaintiff's claims against Defendant Fuller are due to be dismissed.

**F. Summary Judgment Standard**

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[1] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

[1] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff Durward O'Neal Briskey in the Complaint. Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this the 3rd day of November, 2005.

**s/ C. Richard Hill, Jr.**
C. RICHARD HILL, JR. Bar No. HIL045
Attorney for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama 36124
Telephone: (334) 262-1850
Fax: (334) 262-1889
E-mail: rhill@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 3rd day of November, 2005, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Durward O'Neal Briskey
10766 County Road 26
Wedowee, AL 36278

**s/C. Richard Hill, Jr.**
OF COUNSEL